United States v. Devon Bean Good morning and may it please the court. On January 17th of 2015, three Milwaukee police officers at about 725 in the evening were headed, were driving on West Hopkins Avenue, West Hopkins Street in Milwaukee. It was about 725, it's a cold day but just cold for winter, cold. And they're traveling about 35 miles an hour, they're heading essentially southeasterly direction. West Hopkins is one of Milwaukee's diagonal streets. And this is undeniably a high crime area. And they're approaching a particular hot spot called Mother's Food and Liquor. The driver, Officer Ramirez, slows his vehicle from about 35 to about 15 to 20. But they're still traveling at a pretty good rate in terms of the amount of time they had to see what happened next. They see my client's car, Devon Bean's car, about 15 to 20 feet southeast of Mother's. And they see the car when they're about 25 to 30 feet away from Mother's. So you do the math, they have a couple of seconds to make the observations that they did in this case. And they see Bean's car and this is what they see. The car is attended, in fact Mr. Bean is driving the car. The car is on, it's running, they can see fumes emitting from the tailpipe. It's near an open store and there's a pedestrian in the area. Indeed a man is there and he's leaning into the car. And they're looking at what may be some kind of contact between the two of them. But what about in Johnson where we said the police don't have to sort out whether the exceptions apply, like a passenger being loaded or unloaded, I mean he was in the loading zone. Correct. He wasn't supposed to be there unless he was dropping off freight or a passenger. In Johnson this court obviously held that when police see what looks like non-loading in a loading zone, in even a brief period of time they've got a probable cause. The court rejected the notion, as Your Honor just alluded to, that they have to sort out or wait to confirm whether it's loading or non-loading. Contrary to the government's arguments here, Bean gets that. We're arguing, we accept that this initial view, this moving snapshot, if you will, is sufficient evidence for the officers if they see non-loading. Would you call that the stop? Not yet. What they're initially seeing is what leads to the stop. It's all in such a short period of time. It's seconds long. It's very compressed. Yeah. But another thing that this court said in Johnson, what it did not say is that every vehicle in a loading zone, irrespective of other factors, creates a probable cause to ticket. So loading, of course, is still legal in a loading zone. And our position, obviously, is that when the police had this snapshot, this moving snapshot view of Bean's car, what they saw looked like loading as opposed to Johnson. Because of the other pedestrian? Because of the other pedestrian, because Bean's in the driver's seat, there's a window down, and because he's leaning in, we don't know if he's getting in, getting out, dropping something off, picking something up. What if the pedestrian wasn't there? What if the car, you know, Bean is in the car, you can see the smoke coming from the tailpipe. Could the police then, would they then have probable cause? It looks a whole lot more like probable cause with that, yes. So everything really rides on the pedestrian being right in the area. That's one of the two main differences between Bean and Johnson. In Johnson, both in the first decision and the panel decision, the court went to some length to talk about the difference, the fact that there was no driver there. In the first case, talking about, given that there was no driver, they could have just walked up and seen what they saw. And in the en banc decision, they talked about how this was, there was a great deal of force that the officers used, but given that there was no driver, the car wasn't going anywhere, it really didn't make any difference. So in Bean, there are these differences. Bean's there, he's driving, he obviously can just move away in a heartbeat, and there's this person who would have looked like he might be doing one of those things. And so it's not the instant moving image probable cause that the officers had in Johnson. These are obviously a very fact-specific situation. Johnson is clear what it says. Bean's facts are not Johnson's facts. As I said, in Johnson, the car is 7 to 8 feet from the crosswalk, so it's within 15 feet. So right away it's in that area where it draws the police attention. The car had all of its doors closed. There's no pedestrians at all in the entire vicinity. No one's in the driver's seat. There's no evidence of loading or unloading or anybody getting in or getting out. And based on those facts, the court said there's probable cause. In other words, there is a substantial chance that there's a violation going on here. Counsel, so the government is not arguing that Johnson applies to a Terry stop kind of situation. What response, if it were, if we said that the cops had reasonable suspicion that there might have been a parking violation because they weren't sure whether this pedestrian was being loaded or unloaded, what would be wrong with that? Well, I guess I'm not going to try to bat that one down because I don't believe that is the state of the law, and that's not what they're arguing. I believe a traffic violation must be based upon probable cause. So it would obviously chip away at the argument I'm making, but I don't believe I have to make that argument. So Terry doesn't apply in this situation? Well, this court in Johnson said both Terry and Run apply, but that in these types of traffic parking ticket type situations, it's probable cause, or a speeding case, probable cause. So what the police encountered with Bean in the moments before making the stop, the snapshot view did not provide them with this notion that we have, there's a substantial chance of a violation going on. It would have shown there's a guy who looks like he might be getting in or getting out. He might be a passenger loading something. And I think what happens here is that they either stop or they drive right past. But underlying this whole thing, obviously, it's not relevant because of the application of Wren. Ironically, it's what they really were interested in, the notion that there might be a drug deal going on here. And again, they either drive by or stop. So the circumstances compelled them to make this very quick decision, and there were not grounds to make the stop for either one. I'm going to reserve the rest of my time unless there are any questions. Thank you, counsel. Thank you. Mr. Koenig. Good morning. May I please support? My name is Jonathan Koenig. I appear on behalf of the United States this morning. I will get to the pedestrian in a minute, but I would like to begin by saying I think it's possible to overthink the parking violation aspect of this case. The officers observed what appeared to be a violation, and they issued a citation. In order to do that, they stopped or seized Bean, at least briefly. This is not only commonplace, it's also permissible under Wren, as interpreted by this court's recent en banc decision in Johnson. It doesn't matter that it was a fine-only offense. It doesn't matter what the officers' motivations may have been. And it probably, to get to your question, Judge Barrett, it probably doesn't matter whether we apply a probable cause standard or a reasonable suspicion standard. There's no dispute about what the officers saw. Admittedly, they had a brief period of time in which to make observations, but they were consistent. Neither of the judges that looked at this questioned their credibility on what they saw, which was a vehicle parked between two no-parking signs, no doors opening or closing, no pedestrians coming to the car or going away from the car. And that brings me to the pedestrian who was leaning deeply into the passenger side of the vehicle. Johnson holds that when officers are presented with an apparent violation, they don't have to investigate all the exceptions and defenses that might apply. But I would just point out that the argument my opponent makes, which is that his client may fall within the exception for receiving or discharging passengers, is a very speculative argument. Again, there was no evidence presented that the pedestrian was a passenger, and nothing presented itself to the officers to suggest that he had either recently gotten out of the car or was about to get into the car. So it's at best a neutral fact, I think, that the man was leaning into the car. Let me back up just a minute, because I think you said something about the car, where it was parked, was an apparent violation, did you say? Yes, sir. Yeah, an apparent violation. That's the first thing they're doing. We also keep referring to this as a high crime area, which some people don't like to use, but nevertheless, apparently that's a fact. And so they're slowing down and they're looking, and the first thing they see is an apparent violation. And I wonder if you need more than that. Do they need more than that? No. Under Johnson, they don't. With respect to the neighborhood, I would observe, as this court did recently in Richmond, that the fact that they were in a high crime neighborhood is part of the overall analysis in and of itself. It doesn't give rise to reasonable suspicion, of course. And the other thing that I would point out with respect to Mothers is that this wasn't just a high crime neighborhood. This was a very specific location that was known to the officers for drug dealing activity. So that makes it, I think, maybe a more salient factor than just, you know, they were in a part of town. It's not coincidental that they're there. They're driving around, and I don't want to say they're looking for trouble, but that's what they have to do in certain kinds of areas, and it's actually looking out for the people that live there, you know, so they've got to be on the lookout for some problem. I couldn't agree more, Your Honor, that the alternative was for them to keep driving and ignore the situation, which I think would have been bad policing. As an aside, I note that being told the PSR writer that the man leaning into his car was, quote, someone he knew and that he merely, quote, lingered too long in the loading zone to talk to him through an open window. That obviously is not consistent with the passenger theory. There's no mention in paragraph 16 of the PSR of this person being a passenger. So just to conclude on the parking violation, as the magistrate judge understood, we're dealing with probable cause, which doesn't require a showing of illegal activity, but merely a showing that there's a substantial chance that criminal activity is underway. So moving to the reasonable suspicion part of our argument, we have argued consistently that the officers also had reasonable suspicion of drug-dealing activity, and the indicia of drug-dealing activity here would be the parking violation itself illegal, the man leaning into the car, what appeared to be a hand-to-hand transaction of some kind, the man on the sidewalk hightailing it out of there when the police showed up, and again, the location in a hotspot for drug-dealing activity. I would briefly note that the unpublished decision in Harris, cited by my opponent, is distinguishable largely because the agents in that case did not observe any illegal activity. All they observed was what appeared to be a hand-to-hand transaction of some kind. Here, you had the parking violation, which attracted the notice of the officers in the first instance, and then they observed the hand-to-hand transaction, and the fellow who's leaning into the car make a U-turn and get out of there. So Harris is distinguishable. I would also point out that neither Harris nor any other case I'm aware of from this circuit establishes a bright-line rule that you must see the substance being passed hand-to-hand in order to have reasonable suspicion. I think there's more play in Fourth Amendment law than that, and under a totality-of-circumstances test. Certainly if you did see cocaine or something, or cash, that might heighten the level of suspicion, but I'm not aware of a requirement in this circuit that you actually see something being transacted. And Harris doesn't stand for that proposition either. So to conclude, we think that the court should affirm the denial of the motion to suppress because the conduct of the officers was reasonable. Either they had probable cause for a parking violation or reasonable suspicion of drug-dealing activity. Either way, they were entitled to stop Mr. Bean and seize his vehicle. I wish to be clear, as we were in our brief, that we're not relying on anything that happened after they stopped the vehicle. Of course, they did smell marijuana. They did observe furtive gestures. But we maintain that they had reasonable suspicion even before that. As each second goes by, something new comes up. You know, the smell of marijuana is running away. It's that initial, I think you call it apparent, violation. That's the first alert that they're going to probably look further, but they've recognized that as a possible violation, traffic violation or whatever you want to call it. Exactly so. Does the panel have any further questions? If not, I'm happy to rest on our brief. Thank you very much. Thank you, counsel. Mr. Campion. Thank you. Johnson did not establish a status offense for simply having your car parked in a loading zone. There has to be something more. I sought to give examples in my briefing about an obvious situation of loading, kids with grocery bags, a person in a wheelchair. Those are obvious things. If a police officer drives by and sees that, that's abundantly clear. Loading is going on. Admittedly, Bean's situation is not nearly as clear cut as that, but it is not Johnson's situation. There are differences. No door is open, but there's a window open such that there's open communication. In fact, a man is leaning in, and again, ironically, the police are worried that there actually is some kind of loading or unloading going on in the form of drug activity. And so, respectfully, Your Honor, I don't believe that this is a situation of an apparent violation. And I think we all know that's not what was first on their mind, whether there's an apparent violation of the parking violation. They thought there might be something else. What counsel states that there's no evidence of what the man was doing, and then also states that in the PSR interview, Mr. Bean said he knew the man who just lingered. Those things are, if I was to argue them now that this was something that actually, I put on evidence that he had placed a bag in there. If the officers didn't see that, it wouldn't matter. What matters is the snapshot, this moving snapshot that they had in those few seconds. That's what matters. What evidence did they have? Did it justify a stop? So anything beyond that is simply not relevant. Now, briefly with regard to this alleged hand-to-hand contact, because that's what it was. It was not an apparent transaction. All three officers, Officers Ramirez and Ferguson and Paolo, all said they did not see an exchange. All of them said that. This is a tactile greeting. And to believe that that's indicative of criminality is to read anything. It grabs way too much innocent contact because this is what it is. It's a fist bump. It's a handshake. It's whatever. It is not a hand-to-hand exchange. And Harris is clear that the court wanted to see evidence of what the officer thought was being exchanged. Thank you very much. Thank you. The case is taken under advisement.